UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION


Home-Owners Insurance Co., et al.,                     Case No. 3:17-cv-105

    Plaintiffs,

v.                                                                          MEMORANDUM OPINION
                                                                                                     AND ORDER

Travelers Indemnity Co.,

    Defendant.


## I. INTRODUCTION

This case arises from a 2013 automotive accident involving Rebecca Sarantou and Plaintiff Michael Bayes. Defendant Travelers Indemnity Co., and Plaintiffs Home-Owners Insurance Co. and Bayes each have filed motions for summary judgment regarding Plaintiffs' complaint seeking a declaratory judgment as to the availability and extent of coverage under an insurance policy issued by Travelers to its insured, the Girl Scouts of Western Ohio, who was Sarantou's employer at the time of the accident. For the reasons stated below, Travelers' motion is granted and Plaintiffs' motions are denied.

## II. BACKGROUND

On May 17, 2013, Sarantou exited the parking lot of the Girl Scouts' office on Collingwood Avenue in Toledo, Ohio, driving to her home, when her van collided with Bayes' motorcycle. Bayes was knocked off his motorcycle and injured as a result. Bayes filed a claim with Sarantou's insurance

carrier, Liberty Mutual Insurance, and a claim under the underinsured-motorist provision of his insurance policy with Home-Owners. Sarantou's policy included a $100,000 liability coverage limit. Subsequently, Bayes and Home-Owners learned that, at the time of the accident, the Girl Scouts had in place a commercial automobile policy issued by Travelers. (Doc. No. 19-1 at 3). Plaintiffs initiated this litigation to pursue compensation for Bayes' injuries and expenses to the extent those exceed the coverage provided by Sarantou's policy with Liberty Mutual.

### III. STANDARD

Summary judgment is appropriate if the movant demonstrates there is no genuine dispute of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). All evidence must be viewed in the light most favorable to the nonmovant, *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 390 (6th Cir. 2008), and all reasonable inferences are drawn in the nonmovant's favor. *Rose v. State Farm Fire & Cas. Co.*, 766 F.3d 532, 535 (6th Cir. 2014). A factual dispute is genuine if a reasonable jury could resolve the dispute and return a verdict in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A disputed fact is material only if its resolution might affect the outcome of the case under the governing substantive law. *Rogers v. O'Donnell*, 737 F.3d 1026, 1030 (6th Cir. 2013).

### IV. ANALYSIS

The parties' motions turn on the proper interpretation of the scope of the following provision (the "Employee-Insured Provision"): "Any 'employee' of yours is an 'insured' while using a covered 'auto' you don't own, hire or borrow in your business or personal affairs." (Doc. No. 19 at 50). Contract interpretation must "give effect to the intent of the parties to the agreement" and "honor the plain meaning of the policy's language 'unless another meaning is clearly apparent from the contents of the policy.'" *Ohio N. Univ. v. Charles Constr. Servs., Inc.*, --- N.E.3d ---, 2018 WL 4926159, at *2 (quoting *Westfield Ins. Co. v. Galatis*, 797 N.E.2d 1256, 1261 (Ohio 2003)). A court

2

must enforce the unambiguous terms of a written contract. *Hamilton Ins. Serv., Inc. v. Nationwide Ins. Cos.*, 714 N.E.2d 898, 901 (Ohio 1999).

A contract provision is ambiguous if it is subject to two or more reasonable interpretations. *King v. Nationwide Ins. Co.*, 519 N.E.2d 1380, 1383 (Ohio 1988). Plaintiffs have not demonstrated the Employee-Insured Provision is ambiguous because they do not identify an alternative reasonable interpretation.

Bayes contends this provision extends coverage to employees like Sarantou <u>at any time</u> the employee drives the employee's personal vehicle. (Doc. No. 31 at 5). Home-Owners offers a slightly different but perhaps equally broad interpretation, asserting the Employee-Insured Provision provides coverage because an employee "is furthering [the] Girl [Scouts'] business and/or personal affairs" any time the employee drives a vehicle that the employee also regularly drives during the course of employment. (Doc. No. 30 at 10).

Plaintiffs' proposed interpretations of the Employee-Insured Provision would transform that provision – a provision found within a section of a commercial automobile policy titled "Business Auto Extension Endorsement" – into a personal insurance provision, and those interpretations simply are not consistent with the policy Travelers issued to the Girl Scouts[1]. *See, e.g., Bobier v. Nat'l Cas. Co.*, 54 N.E.2d 798, 800 (Ohio 1944) ("A contract of indemnity insurance should be construed in the light of the subject matter with which the parties are dealing and the purpose to be accomplished."); *Gomolka v. State Auto. Mut. Ins. Co.*, 436 N.E.2d 1347, 1351 (Ohio 1982) ("The intention of the parties must be derived . . . from the instrument as a whole, and not from detached or isolated parts thereof."); *Arrowood Indem. Co. v. Lubrizol Corp.*, No. 1:10 CV 2871, 2013 WL

---

[1] Home-Owners contends the parties meant to cover accidents such as this one because the policy includes "an additional premium of $10,157.00 . . . for non-owned auto liability exposure involving" employees of the Girl Scouts. (Doc. No. 20 at 12). The implication that an insurer would charge approximately $10 per employee for this coverage ($10,157.00 divided by 1,001 employees), is not particularly persuasive. (Doc. No. 19-1 at 23).

3

12131142, at *3 (N.D. Ohio Mar. 30, 2013), *aff'd*, 695 F. App'x 842 (6th Cir. 2017) ("All provisions should be construed together to determine the meaning and the intent of a particular clause.") (citing *Ohio Historical Soc'y v. Gen. Maint. & Eng'r Co.*, 583 N.E.2d 340, 343 (Ohio Ct. App. 1989)).

Further, even if I were to assume the Employee-Insured Provision is ambiguous, Plaintiffs have not established a right of recovery. If an insurance contract contains an ambiguity, the ambiguity is to be construed "in favor of the *policyholder*, not the claimant." *Westfield Ins. Co.*, 797 N.E.2d at 1265 (emphasis in original). The Supreme Court of Ohio's decision in *Westfield* rejected several arguments substantially similar to those offered by Home-Owners and Bayes. The *Westfield* Court explicitly held "[a]n employer does not risk legal or financial liability from an employee's operation of a non-business-owned motor vehicle outside the scope of employment. Consequently, uninsured motorist coverage for an employee outside the scope of employment is extraneous to the general intent of a commercial auto policy." *Id.* at 1263-64. The *Westfield* Court further concluded that since "[t]he purpose of a commercial auto policy is to protect the policyholder[,] . . . [p]roviding uninsured motorist coverage to employees who are not at work . . . is detrimental to the policyholder's interests." *Id.* at 1266 (citing *Cook v. Kozell*, 199 N.E.2d 566, 569 (Ohio 1964)).

There is no genuine issue of material fact which would permit a jury to conclude Sarantou was acting within the scope of her employment when she switched lanes and struck Bayes and his motorcycle. While it is not dispositive, Ohio courts tasked with determining whether a person was acting within the scope of the person's employment for purposes of insurance coverage frequently utilize the "coming and going" rule developed in the context of worker's compensation cases. *See, e.g., Houston v. Liberty Mut. Fire Ins. Co.*, No. L-04-1161, 2005 WL 1926513, at *6 (Ohio Ct. App. Aug. 12, 2005). The coming and going rule provides that, while an employee is acting within the scope of employment when performing "some required duty done directly or indirectly in the service of the

4

employer," the employee is not acting within the scope of employment "while traveling to or from a fixed place of employment." *Id.*

Sarantou works at the Girl Scouts' office in Toledo, Ohio, and, on occasion, drives to Girl Scouts' offices in Dayton, Lima, and Cincinnati, Ohio, and to visit "community partners at their locations." (Doc. No. 19-2 at 38). While Plaintiffs place significant emphasis on the fact that Sarantou estimates she travels for work approximately 20% of the time, the corresponding fact that she spends 80% of her time at the Toledo office has been held to be sufficient to make an employee a fixed-site employee. *See Am. Nat'l Prop. & Cas. Co. v. Morgenstern*, No. 06AP-197, 2006 WL 3008477, at *3 (Ohio Ct. App. Oct. 24, 2006) (holding that a chiropractor who treated patients in the office four days a week was a fixed-site employee under the coming and going rule). Sarantou had not driven to a Girl Scouts location outside of Toledo on the day of the accident, and was traveling from the Toledo office to her home. (Doc. No. 19-2 at 40). She therefore was not engaged in travel at her employer's direction, and was not acting within the scope of her employment.[2] *See, e.g., Davis v. Galla*, No. L-08-1149, 2009 WL 580459, at *3 (Ohio Ct. App. Mar. 6, 2009) (affirming trial court's holding that Galla's employer was not vicariously liable for his negligent driving because "an employee's commute to and from the designated job site is not considered conduct within the scope of employment").

The court's decision in *Houston* does not compel a different result. In that case, the court concluded the trial court had erred in granting the insurer's motion for summary judgment because there was evidence that the plaintiff was a non-fixed-site employee who may have been traveling

---

[2] The parties disagree regarding whether Sarantou was paid an hourly wage for her time spent traveling to and from work or not. This fact is not material, however, and does not prevent me from granting Travelers' summary judgment motion. *See Houston*, 2005 WL 1926513, at *7 ("Whether an employee is paid for driving time is not dispositive of whether the employee is in the course of his or her employment." (citing *Ruckman v. Cubby Drilling, Inc.*, 689 N.E.2d 917, 921 fn.1 (Ohio 1998)).

5

between locations at her employer's direction or who, alternatively, may have been engaged in a personal errand. *Houston*, 2005 WL 1926513, at *7. The record in this case does not contain similar facts.

"[A] contract is unambiguous if it can be given a definite legal meaning." *Westfield Ins. Co.*, 797 N.E.2d at 1261 (citing *Gulf Ins. Co. v. Burns Motors, Inc.*, 22 S.W.3d 419, 423 (Tex. 2000)). The Employee-Insured Provision can be given the "definite legal meaning" that an employee is covered by the policy if, while engaged in the business or personal affairs of the Girl Scouts, the employee is driving an automobile that the Girl Scouts do not own, hire, or borrow. Sarantou was not engaged in the business or personal affairs of the Girl Scouts when she was driving home in her personal vehicle after completing her work day. Therefore, the Travelers policy does not extend coverage to this incident, and Travelers is entitled to summary judgment.

## V. CONCLUSION

For the reasons stated above, the motion for summary judgment filed by Defendant Travelers Insurance Company, (Doc. No. 18), is granted, and the motions for summary judgment filed by Plaintiffs Home-Owners Insurance Company and Michael Bayes, (Docs. No. 20 and 21), are denied.

So Ordered.

s/ Jeffrey J. Helmick  
United States District Judge